Roger Jackman
No 10507-081
USP Atlanta
PRO SE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Roger Jackman No 10507-081 <br> Plaintiff <br><br> VS <br><br> USA et Al | CIVIL ACTION NO. 1:07-CV-00691 <br> Judge Roberts <br><br> TEMPORARY RESTRAINING ORDER and <br> ORDER TO SHOW CAUSE |

### TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Upon the supporting affidavit of the plaintiff and the accompanying memorandum of law, it is:

ORDERED THAT, the defendants USA, DOJ & BOP Management heads and policymakers show cause in Room _____ of the United States Courthouse, 3rd & Constitution AVE N.W. Washington D.C. 20001, on the _____ day of _____, 2007, at _____ o'clock, why preliminary injunction should not issue pursuant to Rule 65(a), Fed. R. Civ. P., enjoining the said defendants, their successors in office, agents, and employees and all other persons acting in concern and participation with them, to provide a "reasonably safe" facility for the plaintiff and sex offenders to serve his prison time, duly appointed in a court of law, in safety and able to study and prepare his case in his suits, to partake of his Constitutional rights and protected liberties such as: education, recreation, rehabilitation and other rights, immunities and privileges enjoyed by other inmates, and in absence of such a facility be placed on house arrest where he will be safe and can recieve such opportunities, rights and liberties.

And, where he can access medical, dental, psychological, audio, care and treatment without further undue delay.

(A-1)

IT IS FURTHER ORDERED, that effective immediately and pending the hearing and determination to show cause, the defendants will have the plaintiff examined by a qualified, orthopedic specialist; and obtain from that specialist an evaluation of the condition and needed care program for the treatment, surgery and care of plaintiffs knees. This care to be completed as directed by the BOP & DOJ or outside sources.

IT IS FURTHER ORDERED, that effective immediatly and pending hearing and determination to show cause, the defendants will also arrange for the plaintiff to been seen by a certified h.. hypnotherapist to minimally assist him in a minimal effort to of psychological care, recovery, and rehabilitation.

AS WELL, IT IS FURTHER ORDERED, that effective immediately (et al) the defendants will arrange for dental care to be provided for the repair of the plaintiffs remaining teeth and for a dental plate to be made for him, with which to use for eating; arrange for a hearing specialist for his hearing to be checked and remedied, and for an optician to test and supply glasses for the plaintiffs vision issues which include astigmatism and light sensetivity; so he may participate in daytime outdoor recreation, including wrap and tint.

AND, IT IS ORDERED: All transfers to be stopped; until a transfer is arranged for move to a facility which is "safe" for sex offenders, transfer to the Nellis facility with his own cell with shower and certain modifications to adjust for past proven losses of Constitutional Rights and liberties in other facilities because of such a location of safety, or until arrangements are made in a timely manner for home arrest (property included).

(A-2)

Roger Jackman
No. 10507-051
USP ATLANTA
PRO SE

The Nellis facility being closest to the plaintiff's home where he can resume recieving visits;

Finally, it is ordered that this "ORDER TO SHOW CAUSE" and all other papers attached be served upon defendants listed above by _____ 2007 and the US Marshalls service is hereby ordered to effect such service.

_____      _____
UNITED STATES DISTRICT JUDGE              DATE

(A-3)

Roger Jackman
No 10507-081
USP Atlanta
Pro Se

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Roger Jackman No 10507-081 Plaintiff | Civil Action No 1:07-CV-00691 Judge Roberts |
| VS | Declaration in Support of Plaintiffs Motion for a Temporary Restraining Order and Preliminary Injunction |
| USA (ET AL) Defendants | |

## Declaration

I Roger Jackman, Plaintiff, do declair under penalty of perjury the following to be true and correct as able on this 3rd day of May, 2007

1. As is evident by my transfer records, safe facilities are not available for those marked as sex offenders. There are approximately 6000 (3% of federal inmates) and less than 1000 that are housed in 2 "reasonably safe" facilities. The rest of us are left on our own to find safety through lies, deception and, like myself transferred from SHU (special Housing Unit) to SHU.

2. The continual transfers prevent or delay access to law librarys, copies, caselaw, and places of safety to work on legal issues and to file them in a timely manner as happened with my 2255.
   As well, it denies access to opportunities for education, psychological assistance, rehabilitation, medical, dental and other care, rights and liberties given freely and daily to non SO (sex offender) inmates.

3. Also due to continual transfers, I have experienced a loss and denial of access to personal legal documents, loss of mail and evidentary documents which have been thrown away or returned to old Facilities, then thrown

Roger Jackman
No 10507-081
USP Atlanta
Pro se

thrown away, or dissappear to places where there is no recovery as evidenced by the mail search reciept which shows no missing parcels found (ayh?) Many, many(!) documents for proof have become lost or missing for my tort claim (torts themselves & reciepts, 2255, and this case.

4. Transfers to safe facilities (only 2 which I do not qualify for) or transfer to house arrest will give me access to law and legal information I am unable to access now or in SHU Law Libraries and to other documents and records in safety or at all. These accessable from house arrest as well.

5. The question of my safety on a "normal" or "standard" compound, I would happily illustrate to the court by going on a compound until such time I would be beat, raped, stabbed, or murdered; OR removed by SIS due to inmates informing SIS of my danger. (again)

6. I can prove to Your Honor I am not a danger to the public by submitting to a plathysmagraph (again), polygraph, hypnosis, or chemical agent. As well as evidenced by the exhibit marked "Dr Bob letter" in evidence.

7. And as the USA, BOP&DOJ cannot provide places of safety for those marked as SO's; It is in the best interest of the people of the USA and in the intrest of the BOP&DOJ, to comply with their own policy concerning inmate safety and the numerous previous safety suits to place us somewhere we can be safe and access the needed help and care we require, as the BOP&DOJ cannot provide this care and are unqualified and unable to fulfill their mandate and jobs in compliance with our need, care and rehabilitation so we can one day reintigrate into society in safety.

8. If naught else, a transfer to my own cell with a shower at the Nellis facility with a few items to compensate for the loss of

B-2

many of my Constitutional Rights and protected liberties (eg. Law library access, copies, job, training etc), along with the "Temporary Restraining order" and injunction, else I still have denial of psychological care (again), rehabilitation (which due to the "Adam Walsh Act" is now <u>required</u> (again), Library Services, education, TV, movies, Recreation, clothing, chapel, commissary, radio, hobbies, periodicals etc (again)

9. As well as restarting the process of needed care for my eyes, teeth, knees and ears (again and again) and the recovery of loss of depth focus, eye hand coordination, extreme fatigue, muscle and memory loss, physical, emotional, mental, and social deterioration; and to once again face the dangers of being put in a cell with someone who can (again) rape, beat, rob, stab or murder me (as with Mr Ricci in the Elizabeth Smart case in Utah. (remember he was innocent)

10. And, along with compensations, I can recieve visits from my family and friends again. until such time as the government decides to act upon my legal case or until such a time as my "Earned good time" will be illegally taken from me (Dabney vs Anderson 92 F.Supp2d 801 (ND IND 2000)) and I fail my "reeducation" as I cannot answer (with honesty) that I <u>did</u> commit the crimes I am charged with and will then be "civil"ly committed <u>back</u> into the same abusive system.

11. And, I wish the court to show why such a preliminary injunction cannot be issued, effective immediately, as one way will rob me of my rights but <u>some</u> compensations can be made at the Nellis facility if such a route is taken.

Roger Jackman   10507-061
Pro Se

(R3)

Roger Jackman
No. 10507-081
USP Atlanta
Pro Se

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Roger Jackman No. 10507-081<br>Plaintiff<br><br>VS<br><br>USA (ET AL)<br>Defendants | Civil Action No 1:07-CV-00691<br>Judge Roberts<br><br>Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction |

### MEMORANDUM

**Statement of Case**

This case filed under 28 USCA § 1331, 42 USCA § 1983, 5 USCA § 107 (and should include the ADA 42 USCA § 12131 and RA 29 USCA § 706) due to its complexity of issues and numerous defendants.

The Plaintiff seeks a "Temporary Restraining Order" and a "Preliminary Injunction" to ensure that he recieves a restoration of his Constitutional Rights and Protected Liberties including; access to complete legal information (eg Full and Complete Law Library; education; medical, dental, and psychological care; rehabilitation and stability in housing and placement in a place of "reasonable safety" for sex offenders as is his right as a federal inmate, and neccessary for litigation purposes.

The foregoing being neccessary in his self betterment, recovery, mental and physical health, and reintigration into society following his prison sentence, though illegally held against his rights of due process.

(C-1)

## Statement of Facts

The plaintiff was introduced into a penal system (following a loss of due process and illegal action by investigators, defense lawyer, prosecution and judge); to be held in facilities not set up, designed or equipped to handle inmates of the plaintiffs type, sex preference, and charges with any "reasonable safety". He was told to lie or create falsehoods to tell other inmates about his charges due to safety concerns. He was then exposed by inmates, staff and/or those with access to the Federal "Sentry" system where such information as his charges are kept.

This exposure of the plaintiff led him to harm and he was abused, robbed and forced into protective custody where he still faced abuse as well as he lost many (all?) of his Constitutional Rights and Protected Liberties, general care, education and rehabilitation afforded his oppressors and other "standard" inmates.

The plaintiff has repeatedly been abused - mentally, physically, and sexually, repeatedly robbed, continuously transferred and removed or told to leave compounds due to his charges. He has also, due to his charges and sexuality been raped, harassed and forced to perform acts of sodomy and anal intercourse out and in protective custody and while in Protective Custody been forced to be housed with Non PC/Non Sex Offender inmates who also have been told or know of his charges and who physically, mentally, and sexually harass and abuse him.

He has also faced abuses such as denied clothing and shoes, suffered loss of mail - both personal and legal - refused legal copies, information and caselaw; and personal legal documents, law libraries and access to his central file and PSI, all of which deny him legal/timely access to the courts and "reasonable safety".

f. - 2

This treatment by inmates and staff is a constant for sex offenders (SOs) and homosexuals; of which is known about by the BOP and DOJ and has existed for quite some time and have done nothing to secure or create places of "safety" and merely transfer them from facility to facility and holding these inmates for extensive periods of time in SHUs (Special Housing Units) which create losses of rights and liberties for those inmates

Also, due to this treatment, and transfers; medical, dental, optical and psychological care has then been delayed or denied; as well as access to physicians, specialists and treatment (eg orthopedics & optical)

This treatment has led to an impossibility of properly researching and filing legal issues in a timely manner (especially his 2255 though his plea is invalid by improper actions of defense etc) resulting in a continuing wrong and prolonging pain, suffering and need due to physical ailments and denial of psychological assistance for recovery and betterment; this because said transfers put him repeatedly in harms way and threat to his physical and mental well being and cause him to have to restart the process for recieving medical (et al) care without actually recieving said care.

## ARGUEMENT

### Point 1. The Plaintiff is entitled to a "Temporary Restraining Order" and "Preliminary Injunction"

In determining whether a party is entitled to a "Temporary Restraining Order" or a "Preliminary Injunction" factors such as if the party will suffer irreperable injury, the "balance of harships" between the parties, the likelyhood of success on merits and public

(p-2)

intrest. Each of these factors favors the grant of this motion.

A. The Plaintiff is threatened with irreperable harm

I). The Plaintiff has charges which make him unwanted and these charges which are illegally shown (reference in statement) and subject him to "unwanted bodily contact. (Farmer Vs Brennan 114 S.Ct. 1979-1981) and there are too few places of "safety," of which he is not qualified for, he will continue to be transfered (transfers which threaten his safety and well being are a liberty intrest as referenced in his statement) and he will continue to suffer a loss, denial or delay of actually recieving medical, dental psychological care and rehabilitation, optical and auditory care.

This lack of care will cause him future harm physically, mentally, socially and emotionally preventing him from passing required tests (these specific tests simulating the act of due process) for his release (possibly) and prevention of "civil" commitment (illegally applied and a violation of the "Ex Post Facto" Rule) which will result in a continual denial of his Constitutional Rights (such as voting) and resulting in future harm to joints, eyes, ears, and psyche which can and will become irreversable and specifically a violation of his 14th Ammendment right of due process and liberty and 8th being "Cruel and Unusual Punishment" being pain suffering and undue prison time.

Such denial and delay of care becomes "deliberate indifference" to serious need of prisoners and constitutes unneccesary and wanton inflication of pain (Estelle Vs Gamble 429 US 97, 104; 97 S.Ct 285 (76)) and "significantly affects an individuals daily activities (McGukin Vs Smith 974 F.2d 1060). Denial of access to physicians or those qualified to determine "Serious need" (Toussaint Vs McCarthy 801 F.2d 1111) and (Wofel Vs Fergeson

(C-4)

Roger Jackman
No 1:0307-081
USD ATLANTA
PRO SE

689 F.Supp 756, 759 (SD Ohio 83)), and such denial of treatment will lead to future harm (Helling Vs McKinney 924 F2d 1500 (9th 91)) Much of this treatment having been prescribed <u>before</u> arrest.

II) Continual transfer and having to remain in the SHU denies the plaintiff access to a complete and up-to-date law library and legal services available. Such denial has caused and does cause the plaintiff to miss deadlines or suffer due to lack of <u>current</u> legal knowledge of issues. It also leads to subtle losses of important documents due to continual relocation of legal documents all leading to a denial of access to the courts. (Bounds Vs Smith 430 US 817 (9th 77))

III. Each relocation whether to compound or SHU puts the plaintiff again in harms way. Lack of any enforcement and knowledge of inmates intolerance puts those with sex offense charges and the plaintiff at serious risk of harm again and again. Lack of enforcement and follow up result in encouragement of "standard" inmates continually abusing me and allows a permission to such inmates to be encouraged to continue this behavior <u>by this lack of penalty</u> (Northington Vs Jackson 973 F2d 1518, 1525)

 This abuse issue is known, so "inference" <u>can</u> be drawn and prison officials are failing to act on knowledge of danger to specific inmates both homosexual and sex offenders (Young Vs Quinland 960 F.2d 351, 361)

IV. Extensive time spent in SHUs are illegal; such as 187 consecutive days (1), 12 months (2) lead to physical, mental and social degeneration (3) and a loss of due process (4) and are cruel and unusual (5)
  [(1) Knuckles Vs Prasse 302 F.Supp 1036 (ed 69)]

(C-5)

Roger Jackman
No. 10567-081
USP Atlanta
Pro-se

(2) [Sostre Vs McGinnis 442 F.2d 178 (71), 405 US 978 (72)]
(3) "Prison within a Prison" See evidence and "Abuse and Safety in Prisons Report 2006
(4) 14th Amendment
(5) 8th Amendment.

**B. Balance of hardships (favors the Plaintiff)**

I. While the employees of the BOP & DOJ are not restricted in their medical care, can see and change doctors as they like (within reason) and specialists as they are available. And they can enjoy the freedoms of being free from pain an need as soon as possible. Such delays experienced in prison would never be tolerated.

For myself and other inmates exams and optomitrist appointments have and do take over 1½ years for some. At some institutions you must get in line for an evaluation to get in line for an eye exam to wait for glasses to be made. 1½ years (3 total for me now) vs 1-2 weeks for BOP/DOJ employees and they can switch opticians if they don't like the wait times or care givers if they are unhappy with the service or its too slow.

Lack of medical care due to lack of funds has been shown <u>not</u> to be a valid excuse, and the prisoners intrest in safety and medical care outweigh states intrest in saving money. (Duran Vs Anaya 642 F.Supp 510, 527 (DNM 86))

Loss of knees, eyes, hearing or ability to function normally in society, of an inmate vs an employee whos immediate needs are met and refuse treatment for others weighs almost soley on the side of the plaintiff for hardship. Although, an inmate going batshit crazy <u>would</u> make things easier on the defendants...

II. Continual transfer and lack of money denies legal relief to
12

Roger Jackson
No 10507-081
USP Atlanta
A20-86

the plaintiff more than an organization who has the funds and myriads of people to handle their legal affairs. Those who have others to handle such affairs cannot appreciate the need of those who have to preserve and fight for <u>their</u> Constitutional Rights with no assistance, out-of-date books, books missing sections, pages or references with no access to computers, information and up-to-date libraries, and must write with half pencils and use shoes for erasers or rewrite pages.

And, all this lack of access "creates an impossible situation on the inmate seeking legal relief," (again Bounds Vs Smith 430 US 817(77))

And as in the plaintiff's case has already created a block in his ability to have his 2255 issues meaningfully addressed due to lack of ability and time constraints and blocks which deny him legal relief.

Again, the hardship falls upon the plaintiff.

II. Physical, mental, sexual or psychological abuse faced by the plaintiff when dealing with inmates, staff, and transfers. The psychological hardships of continual confinement in extremely close areas for looong periods of time combined with the fear of attack (is as well a hardship faced) moment by moment for homosexuals and those with sex offense charges, while those outside of prison have much more control of their surroundings and can leave a threatening situations of stress and danger at will and don't have to face such persecutions, let alone in the extremes some inmates do; as those outside control the guns, keys, alarms and can choose to open a door and run to safety or bar the door until danger passes.

Again the plaintiff favored.

(C-7)

Roger Jackson
No 10507-081
USP Atlanta
Pro Se

So the present suffering of the plaintiff and his potential suffering if he losses use of his eyes; limbs; denial of access to the courts leading to a life of imprisonment and suffering, and the continual abuses, rape, theft, faced by the plaintiff and its dehumanizing effects verses the "suffering" of the defendants if the order is granted by the court is that the defendants will have to provide the assistance that should have been provided, and has been paid for four (4) years but has not, by others money for services -fulfilled is business as usual and no pressure, pain or hardship at all.

Even by granting house arrest (property included) and making the plaintiff seek his own care with a small stipend and medical benefits as provided to disabled or retirees, proves to affect him/her even less as they no longer have to perform any search functions, but only must "O.K." the transaction.

And, even less work and "hardship" on the defendants part by not having to continually transfer the plaintiff or transport him to the care facility, and all monitoring (well most) is all mechanical and electronic.

All pain, effort and suffering is therefore on the plaintiff.

C.) The Plaintiff is likely to succeed based on the merits of his case.

The plaintiff can prove through documents and testimony (even more documents if plaintiff is outside of prison setting) and can show the prejudice faced by himself and others in his position. The failure to provide needed service when the opportunity is there (glasses, knees and proof of innocence) is a point easily settled.

Discrimination and loss of "goodtime" are already a proven fact only needed to be recognized as such by the court by evidence provided. And abuses faced merely a file or newspaper add away.

(-8)

Roger Jackman
No. 10507-081
USP ATLANTA
PRO SE

The plethora of case law available (and provided) can back up such actions. The public safety factor of the plaintiff can be ascertained quickly and easily by the court with a plathysmagraph (again), polygraph, hypnosis, and/or chemically within a 1 day span, for completion.

### D. Relief sought would serve the Public Intrest

In this case, the granting of relief will serve public intrest because it is always in the publics intrest for government and prison officials to obey the law (Duran vs Anaya again). Respect for the law, particularly by officials responsible for the administration of the correctional system is in itself a matter of highest public interest.

To do the job paid for is also in the publics intrest and to use the funds the public has provided for the services needed is also a factor to be heeded. And the public has seen too much ignorance of their desire as of late.

To succeed with this case and suit can save untold lives and psyches of children past, present and future. Currently approximately 223 children a day are attacked, raped, molested, kidnapped or murdered by the victims of past attacks, rapes, molestations and kidnappings. This amount is something I can reduce by 25% in 6 months and by half of last years 80,000 to approx 40,000 in the following year.

Each week 100+ registered sex offenders go missing due to the overwhelming stress and strain of requirements placed upon them by the out of porportion laws and punishments which no other people or criminal faces. Approximately 100,000+ are currently missing.

There are approximately 6000 sex offender inmates in the federal system. Less than 1000 have a "safe" place to be. 5000 then are abused, threatened, or are hidden in fear for their lives and cannot recieve help.

C-9

Roger Jackman
No 10507-021
USP Atlanta
Pro Se

I know how to provide temporary Very "safe" shelter in 6 months which can also support a majority of the missing sex offenders. I can get approximately 75% of those back within 30 days, if I were allowed and people in the government listened to me. Add special offense help-hotlines and offenses and offended totals drop drastically.

25% offense drop and 75% registered offender recovery in 7 months, and all current sex offender inmates have a place to start now to get the help they need so they can live productive safe lives in the outside world, until permanent facilities are built. All this with equipment and properties already owned by the Federal Government.

If something isn't done soon, the 80,000 total will rise with more and higher fatality rates for children and more missing Registered Offenders. But if no one cares what can be done, at least the public will be served upon granting of the injunction by not having to cover the countless costs of transfers back and forth I now face, and "I won't" have to pay the bills incurred due to the abuses now heaped upon me.

Even with placement at Nellis facility with the costs of the alternatives will save sanity and transfer costs. Taking care of the needs now will cost less than later when things have deteriorated as seeing eye dogs, nurses, prosthetics, and buses are much more expensive.

### Point 2
The plaintiff should not be required to post security.

Usually a litigant who obtains interim injunctive relief is asked to post security: Rule 65(c) Fed.R.Civ.P.. However, the plaintiff is an indigent prisoner and is unable to post security. The Court has discression to excuse an impoverished litigant from posting security (Orantes-Hernandez vs Smith 541 (?) F Supp 351, 385 (82)

C-10

Roger Jackson
No 10507-081
USP ATLANTA
PRO SE

In view of the health and safety issues, as well as denial of access to the courts, the court should grant relief requested without requireing the posting of security.

### Point 3 Housing and safety

The plaintiff has already designed a dwelling which when built can be locked from the exterior if necessary for safety concerns, and the plaintiff can build it or have it built for a nominal amount and can be factored into the stipend.

### Conclusion

For the foregoing reasons, the court should grant the motion in its entirety.

May 3 2007    Roger Jackson  No 10507-081
                FDC Tallahassee / USP ATLANTA

